UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID SUTHERLAND,

                              Petitioner,

          - against -

CHRISTOPHER SHANAHAN, et al.,
Acting New York Field Office Director for
U.S. Immigration and Customs Enforcement

                              Respondents.

OPINION & ORDER
15-CV-2224 (RLE)

RONALD L. ELLIS, U.S.M.J.:

## I. INTRODUCTION

Petitioner David Sutherland seeks a writ of habeas corpus under 28 U.S.C. § 2241. (Doc.

No. 1) On July 25, 2014, the United States Department of Homeland Security ("DHS") Bureau

of Immigration and Customs Enforcement ("ICE") detained Sutherland pursuant to Section

236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), which mandates that

ICE detain without bond certain categories of criminal noncitizens pending the outcome of their

removal proceedings. (Doc. No. 14-6) Sutherland has now been detained for approximately ten

months. He argues that he is not properly subject to mandatory detention without a bond hearing,

and that he has been deprived of his liberty without due process of law in violation of the Fifth

Amendment to the United States Constitution. (Doc. No. 1) The Parties consented to the

jurisdiction of the undersigned on March 30, 2015, pursuant to 28 U.S.C. § 636(c) and Federal

Rule of Civil Procedure 73. (Doc. No. 7) This case requires the Court to interpret the meaning of

the phrase "when the alien is released" within the statutory framework of the INA. For the

reasons which follow, the Court finds that Sutherland is not properly subject to mandatory

detention. Sutherland's Petition is **GRANTED** and the government is directed to provide Sutherland with an individualized bond hearing by June 15, 2015.

## II. BACKGROUND

Sutherland came to the United States from Trinidad and Tobago in 1980 at the age of fifteen. (Doc. No. 1 at 4.)  Now fifty years old, he has been a legal permanent resident for thirty-five years. (*Id.* at 8.) Sutherland acquired a master barber's license in 1999 and opened a barbershop in Staten Island, New York, that he has relied upon to support his family since. (*Id.*, Ex. A-B) At the time of his ICE arrest, Sutherland was living with and fully supporting his fiancée, her two children, and two children they have together. (*Id.* at 9.) Sutherland is a grandfather of eight children and a father of ten, many of whom are now adults living in his neighborhood. (*Id.* at 8.)

Before he was detained, Sutherland's barbershop was the primary source of income for his family. Since he was arrested, Sutherland's fiancée has had to find employment, and she and the children have had to move from their home as she can no longer afford to pay the rent. (*Id.* at 10.) In Sutherland's absence, his eleven-year-old daughter has suffered a ruptured appendix. She subsequently remained hospitalized for two weeks because of an E. coli infection. (Doc. No. 17) As of May 4, 2015, the child had missed a month of school and was due to return to the hospital for surgery later in the month. (*Id.*) Sutherland's ten-year-old daughter has behavioral and learning disabilities that have progressively worsened during his detention. In her father's absence and without his ability to calm her, she has begun hitting her head against walls and hallucinating people who belittle her. (*Id.*, Ex C.)

A.    **Sutherland's Criminal History**

In 2007, Sutherland was convicted of two drug-related misdemeanors. (Doc. No. 14-3 at

9, 10.) On October 22, 2007, Sutherland pled guilty to criminal possession of marijuana under

NYPL § 221.10. (*Id.* at 10.) On December 14, 2007, he pled guilty to criminal possession of

marijuana under NYPL § 221.15. (*Id.* at 9.) Sutherland was released on his own recognizance

after each underlying arrest, and he was ultimately sentenced to one-year conditional discharges

for each conviction.[1] (*Id.* at 9, 10.) Sutherland was not incarcerated or otherwise held in physical

custody after his convictions.[2]

B.    **Sutherland's ICE Detention and Removal Proceedings**

On the morning of July 25, 2014, approximately six and one-half years after his 2007

convictions, ICE agents went to Sutherland's apartment and arrested him in front of his fiancée

and children. (Doc. No. 14-2 at 2; Doc. No. 11) ICE charged Sutherland with being subject to

removal pursuant to § 237(a)(2)(B)(i)  of the INA for having committed an offense involving a

controlled substance. (Doc. No. 14-2; Doc. No. 14-5)

Sutherland faces removal proceedings which have not yet been scheduled. He has had

several hearings since his arrest, but he did not have legal counsel for the first five months of his

detainment. (Doc. No. 1 at 10.) On March 24, 2015, Sutherland's counsel requested a bond

hearing before Immigration Judge ("IJ") Alan Page. (*Id.*) IJ Page "ruled that Sutherland's case

was controlled by INA § 236(c), 8 U.S.C. § 1226(c), and that Sutherland was therefore not

eligible for bond." (Doc. No. 16-1 at 2.)

---

[1] Sutherland was also sentenced to a $250 fine and six-month license suspension for his October conviction and a six-month license suspension for his December conviction.

[2] Sutherland's full criminal history contains various non-violent, drug-related misdemeanors, a majority of which occurred before the 2007 convictions discussed herein. Because the Notice of Appearance which preceded Sutherland's arrest and detainment premises Sutherland's removability upon his 2007 drug convictions, the rest of his criminal history is irrelevant to the Court's analysis and need not be addressed in full. (Doc. No. 14-5.)

C.       **Sutherland's Federal Habeas Corpus Petition**

Sutherland filed his Petition on March 24, 2015: the same day that IJ Page determined he was ineligible for bond.  (Doc. No. 1) Sutherland seeks an order, *inter alia*, directing ICE to release him "immediately on his own recognizance or under parole, bond, or reasonable conditions of supervision, or, in the alternative, ordering [ICE] to provide [him] with a constitutionally adequate, individualized hearing before an impartial adjudicator" pursuant to 8 U.S.C. § 1226(c).

Sutherland argues that he does not fall within the limited class of persons who are subject to mandatory detention "when . . . released" under 8 U.S.C. § 1226(c) because: 1) the "when . . . released" clause requires an individual to have been subject to post-conviction physical custody; and 2) the "when . . . released" clause requires ICE to arrest and detain individuals "immediately after" or "at the time of" their release. (Doc. No. 1) Because he was neither subject to post-conviction physical custody nor arrested and detained by ICE at the time of his 2007 convictions, Sutherland argues that he is eligible for a bond hearing under 8 U.S.C. § 1226(a). He further argues that his continued detention without an individualized hearing violates his due process rights. (*Id.*)

The government filed its opposition to the Petition on April 23, 2015, and Sutherland filed a reply on April 30, 2015. The Court has reviewed and considered these and other submissions from the Parties.

### III. JURISDICTION

This Court has subject matter jurisdiction over Sutherland's petition pursuant to 28 U.S.C. § 2241(c)(3). *See, e.g., Reynoso v. Aviles*, No. 14-CV-9482 (PAE), 2015 WL 500182, at *2 (S.D.N.Y. Feb. 5, 2015); *Cruz v. Shanahan*, No. 14-CV-9736 (VEC), 2015 WL 409225, at *1

(S.D.N.Y. Jan. 30, 2015); *Martinez-Done v. McConnell*, No. 14-CV-3071 (SAS), 2014 WL

5032438, at *4 (S.D.N.Y. Oct. 8, 2014); *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d 533, 537

(S.D.N.Y. 2014); *Lora v. Shanahan*, 15 F. Supp. 3d 478, 482 (S.D.N.Y. 2014); *Straker v. Jones*,

986 F. Supp. 2d 345, 350 (S.D.N.Y. 2013). Although the INA precludes judicial review of the

Attorney General's discretionary judgments regarding the detention and release of noncitizens,

*see* § 1226(e), the United States Supreme Court has held that the INA "does not deprive the

federal courts of jurisdiction to grant habeas relief to aliens challenging their detention under §

1226(c)." *Demore v. Kim*, 538 U.S. 510, 511 (2003). The government does not dispute this

Court's jurisdiction over Sutherland's Petition. (Doc. No. 15)

## IV. APPLICABLE LAW

### A.    8 U.S.C. § 1226; INA Section 236

8 U.S.C. § 1226 regulates the detention of noncitizens who are facing removal because of

past criminal convictions. 8 U.S.C. § 1226; INA Section 236. Section 1226(a) describes the

overall framework for detention, authorizing the Attorney General to arrest and detain

noncitizens "pending a decision on whether the alien is to be removed from the United States."

*See id.* Section 1226(a) also provides for individualized review of detention decisions and

dictates that noncitizens may be released on bond or on conditional parole while they await

removal proceedings. *See id.* Section 1226(c) creates an exception to this default structure and

sets forth a class of noncitizens who are ineligible for individualized review because they have

been convicted of certain enumerated offenses. *See id.* These individuals are subject to

mandatory detention while they await removal proceedings. *See id.*

Section 1226(c) states:

> The Attorney General shall take into custody an alien who [has been convicted of
> the offenses enumerated herein] when the alien is released, without regard to

5

whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

*Id.*

"The mandatory detention provision does not reflect a general policy in favor of detention; instead, it outlines specific, serious circumstances under which the ordinary procedures for release on bond at the discretion of the immigration judge should not apply." *Lora*, 15 F. Supp. 3d at 483 (quoting *Saysana v. Gillen*, 590 F.3d 7, 17 (1st Cir. 2009)). At the time Congress enacted the mandatory detention provision, it was faced with "INS's near-total inability to remove deportable criminal aliens" and was "concerned with evidence that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers. *Demore*, 538 U.S. at 511. In efforts to reduce recidivism and facilitate the removal of those most likely to flee, Congress enacted the mandatory detention provision. *Lora*, 15 F. Supp. 3d at 483.

**B.    Statutory Interpretation**

Questions of statutory interpretation require the Court to "begin with the text of the statute to determine whether the language at issue has a plain and unambiguous meaning." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) (citations omitted). The text is considered in "the specific context in which that language is used, and the broader context of the statute as a whole. *In re Ames Dep't Stores, Inc.*, 582 F.3d 422, 427 (2d Cir. 2009). Where the meaning of a statute is ambiguous, a court may consult extrinsic materials such as the statute's legislative history. *Louis Vuitton*, 676 F.3d at 108 (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 568 (2005)). "At the same time, [a court] must interpret [a] specific provision in a way that renders its consistent with the tenor and structure of the whole act or statutory scheme of which it is a part [and] . . . give effect, if possible, to every clause and

word of a statute. *Bechtel v. Competitive Techs.*, 448 F.3d 469, 471 (2d Cir. 2006) (internal

quotation marks omitted)(citations omitted).

## C.      Chevron Deference

Where an agency has interpreted the statute at issue, the Court must first ask "whether

Congress has directly spoken to the precise question at issue. If the intent of Congress is clear,

that is the end of the matter." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S.

837, 842 (1984). If the statute is "silent or ambiguous," however, the Court must then ask if the

agency's interpretation is "based upon a permissible construction of the statute." *Id.* at 843.

Where an agency's interpretation is "arbitrary, capricious, or manifestly contrary to the statute"

the Court must reject that interpretation. *Id.* at 844, 843 n. 9 ("The judiciary is the final authority

on issues of statutory construction and must reject administrative constructions which are

contrary to clear congressional intent.").

## V. DISCUSSION

### A.      The Meaning of "When"

#### 1.      Judicial Interpretations of "When"

##### a.      The BIA's Interpretation

In *Matter of Rojas*, the Board of Immigration Appeals ("BIA") interpreted the word

"when" in the INA's mandatory detention statute to be an identification of the point at which the

Attorney General's duty to detain is *triggered* rather than a description of the window within

which the Attorney General must act. 23 I. & N. Dec. 117 (BIA 2001)(en banc). The BIA

determined that "Congress was not attempting to restrict mandatory detention to criminal aliens

taken immediately into Service custody at the time of their release from a state or federal

correctional institution." *Id.* at 122.

### b.    Circuit Court Interpretations

As Congress has delegated the authority to interpret the INA to the BIA, the validity of the BIA's interpretation is governed by the *Chevron* framework. The Second Circuit has not yet addressed the meaning of "when" in the mandatory detention statute, though it will do so in *Lora v. Shanahan*.[3] 15 F. Supp. 3d 478. The Circuit Courts that have addressed this issue are split.

The Fourth and Tenth Circuits concluded that § 1226(c) is ambiguous and that the BIA's interpretation of "when" in *Rojas* is permissible. *See Hosh v. Lucero*, 680 F.3d 375, 383-84 (4th Cir. 2012) (petitioner detained approximately three years after release); *Olmos v. Holder*, 780 F.3d 1313 (10th Cir. 2015) (petitioner detained six days after release). The Third Circuit reached the same conclusion as the BIA, but did not engage in *Chevron* analysis, instead relying on "analogous" case law concerning bail in the criminal context. *See Sylvain v. Attorney General of the United States*, 714 F.3d 150 (3d Cir. 2013) (petitioner detained four years after release).

A panel of the First Circuit reached the opposite conclusion from the Fourth, Tenth and Third Circuits, and concluded that although § 1226(c) is ambiguous, interpreting "when" to mean "any time after" would be unreasonable.  The Court found that § 1226(c) required that aliens subject to mandatory detention without bond "be detained within a reasonable time after their release from state criminal custody, and that what is a reasonable time must account for the inherent difficulties in identifying and locating an alien upon release from state custody." *Castaneda v. Souza*, 769 F.3d 32, 44 (1st Cir. 2014), *reh'g en banc granted, opinion withdrawn* (Jan. 23, 2015) (petitioners each detained four to five years after convictions). Notably, the First Circuit also held that it "did not read *Rojas* as interpreting 'when' to mean 'any time after'" and cited the Third Circuit in *Sylvain* for the premise that the BIA "did not explicitly interpret the

---

[3] The government has appealed the Court's holding that "when" creates a window of operation and not a triggering date. Oral argument was held on April 20, 2015.

word 'when.' If anything, it suggested that 'when' denotes immediacy." *Id.* (citing 714 F.3d at 157 n. 9). The Court's decision in *Castaneda* has been withdrawn pending *en banc* review.

### c.     Southern District Interpretations

There is a significant split among the courts in this District as to the meaning of "when" in the INA's mandatory detention statute. A number of courts have interpreted "when" to mean "immediately" or "near in time" – commonly referred to as the "time-limiting" construction.[4] *See, e.g., Ghanim v. Aviles*, 14-CV-9040 (VSB) (S.D.N.Y. Apr. 17, 2015) (Doc. No. 13 at 13) ("[The duty-triggering] construction is contrary to the purpose and plain meaning of the statute, which eliminates the Attorney General's discretion to set bond only for those aliens taken into immigration detention at a time reasonably coincident with their release from criminal custody."); *Cruz*, 2015 WL 409225, at *6 ("[T]he Court finds that section 1226(c) is unambiguous and does not apply to aliens who, like Cruz, were not taken in to[sic] custody until years after their release"); *Rodriguez v. Shanahan*, No. 14-CV-09838 (SN), 2015 WL 405633, at *14 (S.D.N.Y. Jan. 30, 2015) ("[T]he Court concludes that 'when the alien is released' is unambiguous: it means 'at or around the time of release' and does not include non-citizens such as [Petitioner] who are taken into DHS custody years after release."); *Figueroa v. Aviles*, No. 14-CV-9360 (AT), 2015 WL 464168, at *4 (S.D.N.Y. 2015) ("This Court adopts the 'time-limiting construction' of § 1226(c) articulated in *Martinez-Done* and other Southern District of New York cases."); *Martinez-Done*, 56 F. Supp. 3d at 546 ("[T]his Court must adopt the interpretation of section 236(c) that favors removable aliens: the time-limiting construction."); *Araujo-Cortes*, 35 F. Supp. 3d at 540-41 (finding "when released" clause unambiguous and that "§ 1226(c) was intended to apply to non-citizens who are immediately transferred into immigration detention.");

---

[4] Nine judges in this District have adopted the "time-limiting" construction.

*Lora*, 15 F. Supp. 3d 478 ("[T]he clear language of the statute indicates that the mandatory

detention of aliens 'when' they are released requires that they be detained at [or near] the time of

release." (quotation marks omitted)); *Arjune v. Shanahan*, No. 15-CV-1551 (AJP), 2015 WL

1529286, at *4 (S.D.N.Y. Apr. 7, 2015) ("As in Lora, while the exact point at which ICE loses

its authority to detain without affording an alien an individualized bail hearing under § 1226(c)

may be unclear, the Court is confident that a [three or] four-year gap between criminal release

and assumption of immigration custody is an unreasonable delay . . . ." (quotation marks

omitted)); *Jean v. Orsino,* No. 11-CV-3682 (LTS) (S.D.N.Y. June 30, 2011) (Doc. No. 24 at 8.)

("Here, where immigration detention was not initiated until almost ten years after the petitioner

was released from criminal custody . . . Section 1226(c) is inapplicable on its face. . . .

[D]eference to . . . *Rojas* would be inappropriate because the Court finds the board's

interpretation of the statute is unreasonable and contrary to the plain meaning of the statute.");

*Louisaire v. Muller*, 758 F. Supp. 2d 229, 236 (S.D.N.Y. 2010); *Garcia v. Shanahan*, 615 F.

Supp. 2d 175, 182 (S.D.N.Y. 2009) ("[T]he plain language of the statute is unambiguous and

manifests Congress' clear intent that there must be a nexus between the date of release and the

removable offense.").[5]

Other courts in this District, however, have interpreted "when" in the INA's mandatory

detention statute as triggering ICE's duty to detain rather than creating a time frame in which that

detainment must occur – commonly known as the "duty-triggering" construction.[6] *See, e.g.,*

*Thompson v. Napolitano*, No. 13-CV-9126 (LTS) (JLC), 2014 WL 2609701, at *1 (S.D.N.Y.

June 2, 2014) ("As the Court finds that the BIA's interpretation of Section 1226(c) is reasonable,

---

[5] The majority of district courts to address this issue have adopted the time-limiting construction. *Lora*, 15 F. Supp. 3d at 487 (quoting *Debel*, 2014 WL 708556 at *4 (collecting cases)).

[6] Eleven judges in this District have adopted the "duty-triggering" construction.

[Petitioner's] detention is mandatory under the statute.); *Baker v. Johnson*, No. 14-CV-9500 (LAP), 2015 WL 2359251, at *7 (S.D.N.Y. May 15, 2015) ("This Court cannot conclude that the BIA's interpretation is arbitrary, capricious, or manifestly contrary to the statute . . . Petitioner is subject to mandatory detention . . . despite the approximate five-year lapse . . . ."); *Miller v. Decker*, No. 15-CV-471 (PKC), 2015 WL 1433276, at *6 (S.D.N.Y. Mar. 30, 2015) ("[T]he BIA's analysis in Rojas is a permissible agency interpretation of ambiguous statutory language, and is entitled to Chevron deference."); *Young v. Aviles*, No. 14-CV-9531 (JMF), 2015 WL 1402311, at *6 (S.D.N.Y. Mar. 26, 2015) ("[T]he BIA's interpretation of Section 1226(c) is arguably correct, and certainly based on a permissible construction of the statute. It follows that [Petitioner] is subject to mandatory detention under the statute despite the fact that he was not detained by DHS immediately after his release from . . . custody." (quotation marks omitted)); *Romero v. Shanahan*, No. 14-CV-6631 (KBF), 2014 WL 6982937, at *5 (S.D.N.Y. Dec. 10, 2014) ("BIA's interpretation is a permissible interpretation of an ambiguous text, and one that is supported by logic and the legislative history of the statute." (quotation marks omitted)); *Charles v. Aviles*, No. 14-CV-3483 (MHD), 2014 WL 3765797, at *4 (S.D.N.Y. July 25, 2014) ("[G]iven both the language and structure of section 1226, as well as the intentions of Congress in enacting these provisions, as reflected in the legislative history, we view the [duty-triggering interpretation] as more plausible than [the time-limiting] reading."); *Debel v. Dubois*, No. 13-CV-6028 (LTS) (JLC), 2014 WL 1689042, at *5 (S.D.N.Y. Apr. 24, 2014) ("[T]he Court cannot find that the BIA's interpretation is an unreasonable 'accommodation of conflicting policies that were committed to the agency's care by the statute. The Court must therefore defer . . . .'" (quotation marks omitted)); *Straker*, 986 F. Supp. 2d 345 ("[T]he Court defers to the BIA's interpretation of § 1226(c) in *Rojas*. It is not only reasonable, but persuasive. Under that

interpretation, DHS's duty to detain . . . does not terminate if DHS cannot, or does not, act expeditiously."); *Johnson v. Orsino*, 942 F. Supp. 2d 396, 407 (S.D.N.Y. 2013) ("[T]he Court concludes that section 1226(c) is ambiguous, and that the BIA's interpretation of the statute is permissible."); *Santana v. Muller*, No. 12-CV-430 (PAC), 2012 WL 951768, at *4 (S.D.N.Y. Mar. 21, 2012) ("The BIA's interpretation of § 236(c) is consistent with . . . Congressional goals and is therefore entitled to this Court's deference . . . That ICE failed to apprehend Santana for nine years does not change his status as a member of this [mandatory detention] class."); *Guillaume v. Muller*, No. 11-CV-8819 (TPG), 2012 WL 383939, at *4 (S.D.N.Y. Feb. 7, 2012) ("[T]his court holds that § 236(c) should not be interpreted to require that a criminal alien be immediately taken into immigration custody following release from criminal custody for an offense falling within one of the aforementioned categories.") *Mendoza v. Muller*, No. 11-CV-7857 (RJS), 2012 WL 252188, at *3 (S.D.N.Y. Jan. 25, 2012) ("[T]he Board's construction of the statute in *In re Rojas* is reasonable and, therefore, the Court will defer to that interpretation."); *Gomez v. Napolitano*, No. 11-CV-1350 (JSR), 2011 WL 2224768, at *3 (S.D.N.Y. May 31, 2011) ("Because the BIA's interpretation is consistent with congressional goals as evidenced by legislative history, the Court concludes that the interpretation is reasonable."); *Sulayao v. Shanahan*, No. 09-CV-7347 (PKC), 2009 WL 3003188, at *7 (S.D.N.Y. Sept. 15, 2009) ("Reviewing the BIA's interpretation of section 1226(c), this Court cannot conclude that it is arbitrary, capricious or manifestly contrary to the statute." (quotation marks omitted)).

### 2. "When" is Unambiguous and Denotes Immediacy

Starting with the plain text of the statute, the meaning of the clause "when the alien is released" is unambiguous and clear. *Louis Vuitton*, 676 F.3d at 108. "As several courts have explained, the term 'when' includes the characteristic of 'immediacy,' referring in its primary

conjunctive sense, to action or activity occurring 'at the time that' or 'as soon as' other action has

ceased or begun.'" *Lora*, 15 F. Supp. 3d at 487-88 (quotation marks omitted)(collecting cases).

"To the extent there is ambiguity in the phrase 'shall take into custody . . . when the alien is

released,' it pertains only to the amount of time that may lapse before the 'tak[ing] into custody'

is no longer reasonably coincident with the alien's 'release[].'" *Ghanim*, 14-CV-9040 (S.D.N.Y.

Apr. 17, 2015) (Doc. No. 13 at 13).

　　　Examining the specific context in which the word "when" is used, it is evident that

Congress intended for aliens to be detained "at" or "just after the time that" they are released

from custody. Although the Government argues that "the phrase could also specify that ICE

becomes responsible for detaining aliens once they are released from the custody of another

authority, and not before," it offers no explanation for Congress's failure to use phrases explicitly

conveying this idea in the mandatory detention statute. (Doc. No. 15 at 17.) The comparative

examples the government uses to support its position only further demonstrate that Congress

knows how to say "not before" when that is what it means. *Id*; *see, e.g.,* 8 U.S.C. § 1228(a)(3)

(prohibiting "removal of any alien sentenced to actual incarceration, *before* release from the

penitentiary or correctional institution where such alien is confined" (emphasis added)); 8 U.S.C.

§ 1231(a)(4)(A) (providing that ICE "may not remove an alien who is sentenced to imprisonment

*until* the alien is released from imprisonment" (emphasis added)). Accepting the Government's

proposition that the word "when" in the mandatory detention statute essentially means "at the

time, and any time after, but not before that time" would require the Court to read several

stipulations into the word that its plain usage does not encompass.

　　　Had Congress intended for ICE to detain individuals at any point after they are released

from custody, it could have written such a statute; using the words "upon" or "after" instead of

"when" would serve these purposes. *See Lora*, 15 F. Supp. 3d at 488 ("Thus if Congress had intended for mandatory detention to apply to aliens at any time after they have released, it easily could have used the language '*after* the alien is released,' 'regardless of when the alien is released,' or other words to that effect. Instead, Congress chose the word 'when,' which connotes a much different meaning." (quoting another source))(collecting cases). Where Congress merely intends to create a pre-condition for the government to exercise its authority rather than a time limitation, it knows how to do so clearly. *See* 42 U.S.C.A. § 1997c(a)(2) ("The Attorney General shall not file a motion to intervene under paragraph (1) *before* 90 days after the commencement of the action, except that if the court determines it would be in the interests of justice, the court may shorten or waive the time period." (emphasis added)).

Examining the broader context of the statute as a whole also supports the Court's conclusion that Congress intended to use "when" as it is commonly defined. *In re Ames*, 582 F.3d at 427. "To give 'when' its ordinary meaning . . . serves the statute's underlying purpose. Read in tandem with section 236(a), section 236(c) designates certain removable aliens for a more stringent detention scheme. As the Supreme Court has explained, the imposition of different forms of detention on different classes of removable aliens stems from concern that some aliens 'present an excessive flight risk or threat to society.' Section 236(c) was Congress's solution to this concern." *Martinez-Done*, 2014 WL 5032438, at *8. As the First Circuit noted in *Saysana*, "it stands to reason that the more remote in time a conviction becomes and the more time after a conviction an individual spends in a community, the lower his bail risk is likely to be." 590 F.3d at 17-18.

Relying upon the Third and Tenth Circuits' reasoning in *Sylvain* and *Olmos*, the government argues that the statute must be read as imposing mandatory detention irrespective of

any gaps in custody because any other reading would cause a "loss of authority." (Doc. No. 15 at 8-9, 16-17.) As Sutherland recognizes, however, both opinions: 1) misinterpret the Supreme Court's jurisprudence on the "loss of authority" doctrine; and 2) improperly apply Bail Reform Act precedent from the criminal context, *United States v. Montalvo-Murillo*, 495 U.S. 711 (1990), to the INA – a structurally dissimilar statute. In *Montalvo-Murillo*, the petitioner argued that the government's failure to hold a bail hearing on his first appearance required his release from pretrial detention under the Bail Reform Act, 18 U.S.C. § 3142(f). 495 U.S. at 715-16. In that case, the government only had one option for detaining someone under the Act: providing an immediate bail hearing. The court determined that the proposed solution – automatic and immediate release – would prejudice the public interests. 495 U.S. at 718. It further stated: "We need seek only a practical remedy, not one that strips the government of all authority to act." *Id.* at 719 (citation omitted). In contrast, the INA's mandatory detention statute provides two options for detaining noncitizens: a default rule requiring individualized hearings under section 1226(a), and an exception mandating detention without bond under section 1226(c). Thus, the government retains its authority to detain pending removal proceedings with the only "consequence" of its failure to act being the requirement that it abide by the default rule described in section 1226(a). *See Rodriguez,* 2015 WL 405633, at *11; *Lora*, 15 F. Supp. 3d at 489. The "loss" of authority" precedent does not apply to Sutherland's Petition.

### 3.   The BIA's Interpretation of the "When . . . Released" Clause in *Matter of Rojas* is Unreasonable and Unworthy of Deference.

Because the Court finds that the meaning of "when" in the INA's mandatory detention statute is clear and unambiguous, it need not defer to any BIA determination under *Chevron* as urged by the Government. Assuming *arguendo* that "when" is ambiguous, however, the Court finds that the BIA in *Matter in Rojas* improperly rendered the "when . . . released" clause mere

surplusage in its structural analysis and, as a result: 1) did not reach the ultimate issue of what "when" means; and 2) did not explore any outer limitations on ICE authority. *See* 23 I. & N. Dec. 117.

Although the government asks the Court to find ambiguity in the word "when" and defer to the BIA, (Doc. No. 15 at 16), the Board did not reach this issue in *Rojas*. The BIA held that the structure of the mandatory detention statute did not incorporate the "when . . . released" clause into the description of the individuals subject to detention without bond. Having deemed the clause irrelevant to its analysis, the BIA did not analyze the meaning or outer limits of "when." This analysis improperly rendered the "when . . . released" clause "mere surplusage" and failed to read § 1226(c)(1) and § 1226(c)(2) as a harmonious whole." *Ghanim*, 14-CV-9040 (Doc. No. 13 at 14 (citing *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

As discussed by the court in *Ghanim*, section 1226(c)(2) authorizes ICE to release individuals "described in paragraph (1)" only if they satisfy the exception for witnesses and cooperators." *Id.* Were the Court to accept the BIA's determination that the relevant "description" only included the list of qualifying convictions in section 1226(c)(1)(A-D) and not the "when released" clause, ICE would be prohibited from releasing individuals from custody regardless of: 1) whether they were ever "released" from physical criminal custody beforehand; 2) when they were released from custody; and 3) whether they were detained pursuant to section 1226(a), section 1226(c), or any other provision. *See Id.* Thus the effect of the BIA's construction would be to "read out" the "when . . . released" clause and prevent sections 1226(c)(1) and 1226(c)(2) from functioning in tandem consistent with the legislative purpose of the INA. *See Id.* ("The purpose of the mandatory detention provision . . . and the purpose of the

mandatory no-release provision . . . are one and the same: to ensure that removable aliens are removed by preventing flight pending removal."); *Clark v. Astrue*, No. 06-CV15521 (SHS), 2007 WL 737489, at *6 (S.D.N.Y. Mar. 8, 2007) (citing *Dunn v. Cftc,* 519 U.S. 465, 472 (1997)) ("[L]egislative enactments should not be construed to render their provisions mere surplusage."); *Bechtel*, 448 F.3d at 471 (2d Cir. 2006) ("We give effect, if possible, to every clause and word of a statute.") This result is untenable and does not merit *Chevron* deference. *See Lora*, 15 F. Supp. 3d at 488; *Araujo-Cortes*, 2014 WL 3843862 at *7 ("[*Rojas's* reading] violates the cardinal rules of statutory interpretation: as it renders the "when . . . released" clause superfluous by giving the clause no meaning.").

Although the BIA analyzed the mandatory detention statute in *Rojas* as it relates to gaps in custody, it "fail[ed] to meet the issue presented by the essential 'when ... released' clause . . ." and deferral on those grounds is unwarranted. *Guillaume v. Muller*, 11-CV-8819 (TPG), 2012 WL 383939, at *4 (S.D.N.Y. Feb. 7, 2012) (Reaching same conclusion as BIA in *Rojas* but determining that "this court cannot follow *Rojas* or accord it deference, because it does not reach the essential issue of statutory interpretation before the court."); *see also Sylvain*, 714 F.3d 150; *Araujo-Cortes*, 35 F. Supp. 3d at 544.

Furthermore, as the Court in *Martinez-Done* discusses, the petitioner in *Matter of Rojas*, argued that he could not be detained without bond after a two-day gap in custody  "on the theory that section 236(c) only applies if detention begins *immediately* after the termination of criminal custody." 2014 WL 5032438 at *6 (emphasis in original). The BIA rejected this "immediate-transfer construction" and held that Rojas was subject to mandatory detention "despite the fact that he was not taken into Service custody immediately upon his release from state custody." *Id.*; *Matter of Rojas*, 231 I. & N. at 127. Presented with a theory of construction which would strip

ICE of all authority to detain individuals who were not immediately transferred from their criminal custodians to ICE, the BIA held that ICE's authority was not so circumscribed. *Id.* at 120, 127 (Board describes issue presented as "whether section 236(c)(2) directs mandatory detention only if the Service immediately takes custody of the alien . . . .") However, the BIA was not faced with a set of facts which explored the bounds of ICE authority where, as here, a petitioner was detained not two days, but approximately six and one-half years after his conviction. *See Martinez-Done*, 2014 WL 5032438 at *7 ("In light of the factual distinctions between this case and *Rojas*, the most reasonable interpretation is that the BIA has not addressed the more difficult question presently before this court: whether to adopt the duty-triggering or the time-limiting constructions of section 236(c).").

### 4.     Sutherland Was Not Detained "When . . . Released."

Applying the statute to Sutherland's case, the Court finds that ICE was not authorized to subject Sutherland to mandatory no-bond detention under section 1226(c) because he was not taken into custody at a time reasonably coincident to any qualifying release from criminal custody. The Court recognizes that a determination of reasonableness must consider inherent variables in the case (e.g., difficulties in identifying and locating noncitizens after they are released from state custody). The statute does not require strict immediacy, but does not tolerate inordinate delays. "While the exact point at which ICE loses its authority to detain without affording an alien an individualized bail hearing under section 1226(c) may be unclear, the Court is confident that a [six and one-half year] gap between criminal release and assumption of immigration custody is an unreasonable delay" for a noncitizen such as Sutherland. *Lora*, 15 F. Supp. 3d at 490 (quoting *Debel v. Dubois*, 2014 WL 708556, at *10). Sutherland's detention can

only be authorized under section 1226(a) which entitles him to an individualized bond hearing
before an immigration judge.

**B.      The Meaning of "Released"**

      **1.      Judicial Interpretations of "Released"**

           **a.      The BIA's Interpretation**

In *Matter of Kotliar* and *Matter of West*, the Board of Immigration Appeals ("BIA")
interpreted the word "released" in the INA's mandatory detention statute to include both pre- and
post-conviction releases from physical custody. *See In Re Kotliar*, 24 I. & N. Dec. 124, 125 (BIA
2007); *In Re West*, 22 I. & N. Dec. 1405, 1410 (BIA 2000). The BIA determined that the word
"release" "appears to refer to a form of physical restraint" and that "[r]eleased in this context can
refer to release from physical custody following arrest." *In Re West*, 22 I. & N. Dec. at 1410; *see
Kotliar* 24 I. & N. Dec. 124 at 125 ("[A]n alien who is released from criminal custody . . .
including from an arrest preceding a conviction . . . is subject to mandatory detention pursuant to
section 236(c) of the Act.").

           **b.      Circuit Court Interpretations**

The Third Circuit is the only court of appeals that has addressed the meaning of the word
"release" in the INA's mandatory detention statute.  *See Sylvain*, 714 F.3d at 161; *see also
Gonzalez-Ramirez v. Sec'y of U.S. Dep't of Homeland Sec.*, 529 F. App'x 177, 181 (3d Cir.
2013), *cert. denied sub nom. Gonzalez-Ramirez v. Johnson*, 134 S. Ct. 956 (2014); *Desrosiers v.
Hendricks*, 532 F. App'x 283, 286 (3d Cir. 2013). In *Sylvain*, the court held that despite the
petitioner's failure to raise an argument about the meaning of "release" in the district court, "his
release from the 2007 arrest that led to his conviction and conditional discharge certainly
fulfilled the release requirement."  714 F.3d at 161 (citing *In Re West*, 22 I. & N. Dec. 1405; *In*

*re Kotliar* 24 I. & N. Dec. 124). In *Gonzalez-Ramirez*, the court dismissed the assertion that its

discussion of the meaning of "release" in *Sylvain* was mere dicta and held that a release from

pre-conviction custody following arrest subjected the petitioner to mandatory detention. 529 F.

App'x at 181.

### c.    Southern District Interpretations

All of the courts in this District that have addressed the meaning of the word "release" in

the INA's mandatory detention statute have held that only a post-conviction release from

physical custody constitutes a "release" for the purposes of 8 U.S.C. § 1226(c). *See, e.g.,*

*Cruzeta-Bueno v. Aviles*, No. 15-CV-1640 (PAE), 2015 WL 2117848, at *2 (S.D.N.Y. May 5,

2015) (holding that mandatory detention statute requires post-conviction physical custody and

acknowledging "emerging consensus" on the issue in this District); *Escrogin v. Tay-Taylor*, No.

14-CV-2856 (RJS), 2015 WL 509666, at *4 (S.D.N.Y. Feb. 5, 2015) ("[T]he Court will not defer

to the Board's determination that a post-arrest release that occurs prior to a removable offense

conviction can constitute a "release" under section 236(c). . .  the statute unambiguously requires

a qualifying conviction, followed by a release, before DHS may subject a deportable alien to

mandatory detention."); *Figueroa v. Aviles*, No. 14-CV-9360 (AT)(HBP), 2015 WL 464168, at

*3 (S.D.N.Y. Jan. 29, 2015) (holding that government lacked authority to detain petitioner

because he "was never released from physical custody following a conviction for an enumerated

offense."); *Martinez-Done*, 56 F. Supp. at 544 (rejecting government's position that a post-arrest,

preconviction release could subject an immigrant to mandatory detention"); *Masih v. Aviles*, No.

14-CV-0928 (JCF), 2014 WL 2106497, at *3 (S.D.N.Y. May 20, 2014) ("[T]he when released

language cannot create a duty to detain upon release from pre-trial detention."); *Lora*, 15 F.

Supp. 3d at 493 (rejecting BIA's interpretation and holding that "when an alien is released into

probation, not from a period of imprisonment but from another form of court supervision or non-physical custody, the alien has not been 'released' within the meaning of § 1226(c)."); *Straker*, 986 F. Supp. at 360 (rejecting BIA's interpretation as unreasonable and holding that "post-arrest release[] . . . did not constitute a "release" within the meaning of § 1226(c)(1).").

### 2. "Released" is Unambiguous and Denotes a Post-Conviction Release from Physical Custody.[7]

Starting with the plain text of the statute, the meaning of the clause "when the alien is released" is unambiguous and clear. *Louis Vuitton*, 676 F.3d at 108. First, the statute requires ICE to take into no-bond custody noncitizens who have been convicted of any of the offenses enumerated in § 1226(c)(1)(B). A noncitizen who has only been arrested and released prior to an adjudication of guilt cannot fall into the enumerated categories because their guilt remains *sub judice*. *See Lora*, 15 F. Supp. 3d at 492. The government's argument that pre-conviction release satisfies the statute does not recognize that, by statutory definition, only noncitizens who have already been convicted of an enumerated offense are subject to mandatory detention. "The statute's text thus naturally fits the paradigm in which the alien (1) is convicted of an offense enumerated in § 1226(c)(1)(B), (2) serves a prison sentence for such a conviction, and thereafter (3) is released to DHS. *Straker*, 986 F. Supp. 2d at 357.

An examination of the "placement and purpose" of the word "release" in the statutory scheme, *Cruz-Miguel v. Holder*, 650 F.3d 189, 195 (2d Cir. 2011), also indicates that Congress intended for noncitizens to be detained only upon release from post-conviction physical custody. "First, the statute lists the prerequisites in that order, with conviction . . . preceding any reference to 'release.'" *Escrogin*, 2015 WL 509666, at *4. Second, the mandatory detention statute

---

[7] Because the Parties do not dispute that the word "release" requires prior physical custody, the Court will not engage in an analysis of that question here.

requires ICE to detain noncitizens when they are released "without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." 8 U.S.C. § 1226(c). That the "when . . . released" clause lists various forms of post-conviction court supervision and does not include any discussion of pre-conviction custody or release demonstrates that post-conviction physical custody is what Congress had in mind.

This interpretation is consistent with congressional intent. As the Supreme Court discussed in *Demore*, Congressed passed section 1226(c) in order to reduce recidivism and facilitate the removal of those most likely to flee. 538 U.S. at 511. The government argues that "an interpretation that turns on the precise nature of an underlying sentence and periods of confinement—rather than the nature of the underlying conviction— . . . runs contrary to the statute's purpose." (Doc. No. 15 at 25.) "On the contrary, it merely (and sensibly) defers to the sentencing court's calculation of the risks involved, which include those factors about which Congress was concerned when it passed section 1226(c)." *Masih*, 2014 WL 2106497, at *4.

### 3.     The BIA's Interpretation of the "When . . . Released" Clause in *Matter of West* and *Matter of Kotliar* is Unsupported and Unworthy of Deference.

Because the Court finds that the meaning of "released" in the INA's mandatory detention statute is clear and unambiguous, it need not defer to any BIA determination under *Chevron* as urged by the Government. Assuming *arguendo* that "released" is ambiguous, however, the Court finds that the BIA provided little reasoning or analysis in support of the interpretation it offered in *Matter of West* and *Matter of Kotliar* and, thus, these opinions are unworthy of deference. *See Lin v. U.S. Dep't of Justice*, 416 F.3d 184, 191 (2d Cir. 2005) ("[W]e do not suggest that there can be no such basis [for deference] . . . only that the BIA failed to supply it."); 22 I. & N. Dec. 1405 (merely stating that "'[r]eleased' in this context can also refer to release from physical custody

following arrest, as is the case with the respondent. We find support for this interpretation in the fact that section 236(c) of the Act requires detention 'when the alien is released. . . . without regard to whether the alien may be arrested . . . again for the same offense.'"); 24 I & N. Dec. 124 (noting that "we have held that an alien who is released from criminal custody (including from an arrest preceding a conviction, as the respondent implicitly conceded took place here) . . . is subject to mandatory detention pursuant to section 236(c) of the Act . . . ."); *see also Masih*, 2015 WL 2117848, at *2 ("[N]either opinion engages in a detailed analysis of the question, so they are of limited utility and do not merit deference on this issue."); *Straker*, 2013 WL 6476889, at *12 ("The BIA's decisions are particularly unworthy of deference, in that *West* contained little reasoning in support of its conclusion on this point, and *Kotliar* none."); *Lora*, 15 F. Supp. 3d at 491 ("[A]lthough the BIA has twice held that the word 'released' includes pre-conviction releases from arrests, the decisions provide little reasoning in support of its conclusion on this point." (quotation marks omitted)(citing *Straker*, 986 F. Supp. 2d 345.)).

Moreover, what little analysis the BIA provides in *West* is unreasonable. As Sutherland argues, "it is a cardinal rule of statutory interpretation that '[a] term appearing in several places in a statutory text is generally read the same way each time it appears.'" (Doc. No. 1 at 13 (citing *Ratzlaf v. United States*, 510 U.S. 135, 143 (1994)).) The word "released" cannot have two distinct meanings in the same sentence; it cannot refer to pre-conviction releases from physical custody when first used in the mandatory detention statute yet solely refer to post-conviction releases in the form of "parole, supervised release, or probation . . ." in the second half of the clause. As Sutherland argues, "[w]hile the government's interpretation could credibly be made compatible with the 'when . . . released' clause ("when the alien is [released from an arrest]"), the 'without regard to' clause refers exclusively to post-conviction conditions. No alien can

possibly be [released from arrest] on parole, supervised release, or probation." (Doc. No. 1 at 13 (citing *Martinez-Done*, 2014 WL 5032438 at \*5 (quotation marks omitted).)

Furthermore, were the Court to adopt a reading of the statute which creates internal inconsistency between the first half of the "when . . . released" clause and its latter listing component, it would fail to read the statute as a harmonious whole. *See Ghanim*, 14-CV-9040 (Doc. No. 13 at 14 (citing *Food & Drug Admin.* 529 U.S. at 133.)). This result is untenable. Although the government argues that construing "released" to refer to post-conviction physical custody relies on the "flawed premise" that a "mere arrest for a qualifying offense would problematically . . . trigger mandatory detention," this argument fails to take this and other courts' analysis to its logical end. (Doc. No. 15 at 19.) Noncitizens only face mandatory detention under the INA when they have been convicted of an offense which makes them removable. *See* 8 U.S.C. § 1226(c). The Court does not take issue with the government's position simply because it would allow a "mere arrest" to trigger mandatory detention, but because there is *no statutory authority for removal* and therefore no statutory authority for detention if an individual has not yet been convicted. It is precisely because ICE's authority to detain is premised upon a noncitizen having been *convicted* of certain enumerated offenses that the word "released" cannot refer to any events occurring prior to a determination of guilt. *See Escrogin*, 2015 WL 509666, at \*4 ("[S]ince an alien is not rendered deportable until convicted of a removable offense, it seems obvious that the conviction is a condition precedent to a qualifying release."); *Martinez-Done*, 2014 WL 5032438, at \*5 ("[W]hy would a statute whose application depends on the presence of a conviction direct the immigration authorities to apply the statute before conviction could possibly have occurred?").

To the extent that the government is urging the Court to adopt a "latter of the two" construction of the statute, (Doc. No. 15 at 24), there is no support for this interpretation in the language or the structure of the mandatory detention statute. Were the Court to conclude that any release from physical custody, pre- or post-conviction, could trigger mandatory detention, the entire "when . . . released" clause would be rendered "mere surplusage." *Clark*, 2007 WL 737489, at *6 (citing Dunn, 519 U.S. at 472 (1997). Every defendant who is ultimately convicted of one of the offenses enumerated in the mandatory detention statute was at some point in criminal custody. Congress undoubtedly understands this basic step in the course of a criminal prosecution and cannot plausibly be presumed to have written a statute which needlessly refers to a "release" when it really means that a conviction will suffice. Defining "release" as broadly as the government does would make qualifying "releases" coextensive with qualifying "convictions." The Court relies upon the principle of *noscitur a sociis* – "a word is known by the company it keeps—to avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress." *Yates v. United States*, 135 S. Ct. 1074, 1085 (2015). Had Congress intended to authorize ICE to detain noncitizens solely based upon their prior convictions, it could have written such a statute and removed the "when . . . released" clause entirely. *See Escrogin*, 2015 WL 509666, at *4; *see, e.g.*, 8 U.S.C. § 1226A (requiring detention of all suspected terrorists irrespective of any conviction or "release").

### 4.    Sutherland Was Never "Released" from Post-Conviction Physical Custody

Applying the statute to Sutherland's case, the Court finds that ICE was not authorized to subject Sutherland to mandatory no-bond detention under section 1226(c) because he was never sentenced to and was thus not "released" from any post-conviction physical custody. (Doc. No.

14-3 at 9, 10.) Sutherland's detention can only be authorized under section 1226(a) which entitles him to an individualized bond hearing before an immigration judge.

**C.    Due Process**

Because the Court finds for Sutherland on the "meaning of 'when' and 'release'" arguments, it need not reach his alternative claim that his continued detention without a hearing violates his procedural due process rights. (Doc. No. 1 at 19-23.)

### VI. CONCLUSION

For the reasons set forth above, Sutherland's habeas corpus petition is **GRANTED**. The government is directed to provide Sutherland with an individualized bond hearing by June 15, 2015.

**SO ORDERED this 5th day of June 2015**
**New York, New York**


**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**